## Severance, Appellant, v. Heyl & Patterson.

Argued May 1, 1934.

Before

Trexler, P. J., Keller, Cunningham, Baldrige, Stadt-feld, Parker and James, JJ.

*Charles Alvin Jones* of *Sterrett, Acheson & Jones,* for appellant.

*E. B. Strassburger* of *Strassburger & McKenna,* for appellee.

Opinion by Parker, J., October 3, 1934:

The questions for consideration on this appeal arose on the trial of an issue framed for the purpose of determining whether a judgment entered by confession should be opened, and concern the right of the plaintiff to amend his declaration and the right of the plaintiff to take a voluntary nonsuit where a counter claim arising out of the same transaction was set up by the defendant.

In April, 1920, a lease was made by plaintiff, F. W. Severance, Trustee, to defendant, Heyl & Patterson, Inc., of certain premises in the city of Pittsburgh for a term of three years. The lease contained a provision that a judgment might be entered by confession in the case of violation by the lessee of any of its covenants

and agreements, and it was therein further provided: "It is further agreed between the parties hereto, that any agreement to continue the tenancy, without mention of the terms on which the premises are to be held, or a holding over after the expiration of the term, with the consent of the lessor, shall be a renewal of this lease, with all the covenants, for the term of one year only from the expiration of the term and so on for every year thereafter, during which such tenancy shall be continued, or holding over take place." The lessee contracted to pay a cash rental, and the amount of any taxes levied on machinery or fixtures placed by the lessee on the leased premises, and "the further rent of the amount by which the taxes levied on the leased premises for any tax year hereafter during the term exceeds the taxes levied on the leased premises for the present tax year (provided that only one-third of such excess, if any, of taxes for the year 1923 shall be payable); said further rents, which are measured by taxes, to be paid whenever and as soon as the respective taxes may become payable."

On March 12, 1931, the defendant notified the plaintiff that he would not occupy the premises after May 1, and vacated the same on April 30, 1931, after paying all rentals due to that date. The plaintiff, on July 1, 1931, caused a judgment to be confessed against the defendant for the full year's rent, in accordance with the terms of the original lease, alleging in his declaration filed therewith that the lease had been renewed for the period of one year beginning May 1, 1931. In support of this allegation, he averred: "Ever since a date prior to the expiration of the three year term provided for in said lease said F. W. Severance, Trustee, and said Heyl & Patterson, Inc. have successively agreed each year to continue the tenancy under said lease and to renew said lease for a term of one year, which renewals have continued down to and

include the agreed upon renewal of said lease for the year beginning May 1, 1931, in that, said Heyl & Patterson, Inc., on or about January 21, 1931, paid to F. W. Severance, trustee, on account of rent for said premises for the year beginning May 1, 1931, the excess of the Pittsburgh City taxes for 1931 over the assessment for 1920 for the eight months from May 1, 1931, the same being all of such taxes, then payable, and the said F. W. Severance, trustee, thereupon received and accepted from said Heyl & Patterson, Inc., such further rent on account of the renewal of said lease for the term of one year beginning May 1, 1931.''

The defendant, in its petition to open the judgment, averred a specific notice and the right to terminate the lease on May 1, 1931, and contending that the payment of the increased taxes for the entire year 1931 did not constitute a renewal of the lease, made a counter claim on account of two-thirds of the taxes so paid covering the period from May 1 to December 31, 1931. The lower court refused the petition to open the judgment. On an appeal to the Supreme Court, the order was reversed (308 Pa. 101, 162 A. 171), the record was remitted to the lower court, and that court made an order opening the judgment. Subsequently, the trial court directed that the issue should be tried on pleadings which should consist of plaintiff's declaration and defendant's petition to open the judgment which should be taken as its affidavit of defense and counter claim. The case proceeded to trial, whereupon the court directed a verdict for the defendant for the amount of its counter claim, and the plaintiff has appealed to this court.

On the return of the record to the court below after the former appeal, the plaintiff presented a petition to amend, which was refused by the trial court and with which we are not now concerned. On the trial of the case, the plaintiff again moved to amend his

declaration "by the insertion therein in Paragraph Five of an allegation that in October, 1925, Mr. Severance conferred with Mr. Heyl at Mr. Heyl's office and stated to him that henceforth Mr. Severance's billing Heyl & Patterson in January of each year for excess taxes, which would be applicable as part rent on the succeeding year's renewal, and Heyl & Patterson's payment of the rent in January would constitute an acceptance by each for the renewal of the lease for another year; that that was then assented to by both parties." The amendment was refused and an offer of evidence to sustain the offer was rejected on the ground that the amendment changed the cause of action. This refusal presents the first question for our consideration.

(1) "Amendments should be liberally allowed; and the test of their propriety is, whether they introduce a new cause of action": Knapp v. Hartung, 73 Pa. 290, 294; Joynes v. P. R. R. Co., 234 Pa. 321, 83 A. 318. "The allowance of amendments rests in the reasonable discretion of the court, and, in the absence of plain error, its action will not be reversed": Piesneski v. Stepien, 300 Pa. 161, 163, 150 A. 296. In Herman v. Rinker, 106 Pa. 121, a petition to open a judgment entered by confession was allowed and at the trial of the case the plaintiff moved to amend his declaration. The lower court refused to allow the amendment, and the Supreme Court reversed, saying (p. 124): "We think, however, that the ordinary rules of pleading should be applied in such cases, and no good reason is apparent why the amendment should not have been allowed." Again, in the late case of Cassler v. Cassler, 294 Pa. 197, 200, 144 A. 88, where the proceeding was to open a confessed judgment, Chief Justice FRAZER said: "The pleadings, which can raise only those questions necessarily involved in the issue framed by the court, should also be within its control.

They must necessarily conform to the order of the court, and are not regulated by the Practice Act."

"The right of amendment has been very much enlarged by several acts of assembly ...... Although the power is thus given, it should be exercised with due regard to the rights of both parties. It should not be allowed so as to deprive the opposite party of any valuable right": Tyrrill v. Lamb, 96 Pa. 464, 467. Consequently, an amendment which changes the cause of action will not be allowed after the statute of limitations has run. Where the opposite party is not deprived of some valuable right, such as the right to plead the statute of limitations, amendments have been allowed with great liberality.

This leads us to an inquiry as to whether a new cause of action was set up by the proposed amendment. " 'A cause of action is the particular matter for which suit is brought. In ejectment the cause of action is the possession of land by one to the exclusion of another entitled to the possession of it': Rochester Boro. v. Kennedy, 229 Pa. 251. This is so, also, in the case of personalty": Rutherford Water Co. v. Harrisburg, 297 Pa. 33, 37, 146 A. 113. "The tests to be applied when the question presented is whether an amended statement presents a new and different cause of action are, would a judgment bar any further action on either, does the same measure of damages support both, is the same defense open in each, and is the same measure of proof required": Goldberg v. Friedrich, 279 Pa. 572, 576, 124 A. 186.

As pointed out by Mr. Justice MAXEY, the lease could have been renewed by two methods: (1) "An agreement to continue the tenancy," or (2) "A holding over." As the premises were surrendered before the end of the term, the question of holding over may be immediately eliminated, and we shall confine our attention to the matter of renewal by agreement. This

was left by the original lease for future agreement and was not required to be in writing.

As the validity of the judgment depended upon the existence of a renewal agreement, it was necessary to support the judgment by an allegation of such fact. On this subject the plaintiff in substance said that prior to May 1, 1923, and successively each year thereafter until and including January, 1931, the parties agreed to a continuance of the tenancy under the lease and in the year 1931 agreed to a continuance, "in that, said Heyl & Patterson, Inc., on or about January 21, 1931, paid to F. W. Severance, trustee, on account of rent for said premises for the year beginning May 1, 1931, the excess of the Pittsburgh city taxes for 1931 over the assessment for 1920 for the eight months from May 1, 1931, the same being all of such taxes, then payable, and the said F. W. Severance, trustee, thereupon received and accepted from said Heyl & Patterson, Inc., such further rent on account of the renewal of said lease for the term of one year beginning May 1, 1931."

The lower court originally was of the opinion that the payment of the excess taxes for the entire year as rent, of itself renewed the lease, but this position the Supreme Court overruled, saying (p. 105): "We hold that the payment of this excess by the tenant did not *as a matter of law* amount to an agreement to continue the lease then in force for the term of one year beginning May 1, 1931, as the landlord alleged in his affidavit." (Italics supplied.) It was, as we have pointed out, the opinion of the trial court that the mere payment of taxes for the entire year effected a renewal, and undoubtedly that position, although not sound, was urged by the plaintiff in his argument on his first appeal. Such argument was not inconsistent with the later averment that the parties agreed that the payment should have such effect. The Supreme

Court also said (p. 108): "If the parties had intended to make the payment of excess taxes in January, the equivalent of an agreement to renew the lease for another term, they should have said so." They now propose to amend so as to specifically aver that the parties agreed that if the plaintiff billed the defendant for taxes in the month of January, the payment by the tenant of the taxes for the entire year would constitute a renewal and that the taxes were so paid and accepted. By offering the amendment the plaintiff tacitly concedes that he did not set out the facts with sufficient definiteness, but, as we see it, the new averment was not contradictory of, but supplemental to, the original statement. The plaintiff still maintains that the lease was renewed by the payment of the taxes, but adds that the parties so agreed.

It will be noted that the test furnished in the case of Goldberg v. Friedrich, supra, for determining whether a new cause of action has been introduced includes an inquiry as to whether the *measure* of damages and the *measure* of proof required are the same. A new cause of action is not introduced merely by including an additional element of damages or proof. As was said by Chief Justice FRAZER in Armstrong & Latta v. Phila., 249 Pa. 39, 49; 94 A. 455: "It is well settled law that an amendment which merely introduces an additional element of damage drawn out of the same circumstances may be allowed at any time, as it does not introduce a new cause of action." The distinction is well illustrated by two cases, Herz v. P. R. R. Co., 302 Pa. 324, 153 A. 686, and Rooney v. Maczko, 315 Pa. 113, 172 A. 151. In the Herz case the amendment was not allowed because it had the effect of changing the liability of the defendant to a situation where it was liable for the consequences of ordinary negligence, while under the pleadings the defendant was only liable for wilful or wanton negligence. In

the Rooney case, the facts were changed but the measure of damages and the measure of proof required were not affected, and consequently the amendment was allowed. Mays v. U. N. G. Co., 268 Pa. 325, 112 A. 22, is another example of an amendment which changed the matter for which suit was brought, and consequently the amendment was not allowed. Vervaeke v. Adams Express Co., 230 Pa. 647, 79 A. 764, was an action in trespass against a common carrier. The statement of claim charged negligence on the part of the defendant based upon a general implied or common law liability of the defendant as a common carrier. The plaintiff was permitted to amend his statement so as to charge the negligence more in detail and refer to a special contract under the terms of which the shipment was made. [This case was reversed by the United States Supreme Court, 229 U. S. 627, upon a constitutional question.]

As we view the matter, a judgment on either averment would be a bar to further action based on the other. The amendment does not change the measure of damages or the measure of proof required, and the same defense is open in each. The effect of the change would be to supplement and make more clear the claim and make admissible facts which could not otherwise have been received as proof of the claim. The claim was and as now proposed is for rental under a renewal of a lease for the same period. In fact, the issue framed by the court was: "Did the plaintiff and defendant agree prior to May 1, 1931 to renew the lease, Exhibit 'A,' for another year from May 1, 1931?" The amendment should have been allowed.

(2) After the plaintiff was denied the right to amend, he made a motion for leave to take a voluntary nonsuit which was refused. This raises the remaining question on this appeal. As we have seen, such proceedings as we are now considering are not regulated

by the Practice Act of 1915: Cassler v. Cassler, supra. We are of the opinion that the motion should have been granted. In the case of McCredy v. Fey, 7 Watts 496, the defendant had pleaded a set off and given evidence when a motion was made for a voluntary nonsuit, which was refused. In reversing the trial court, it was there said (p. 500): "But in no case, I apprehend, is it competent for the defendant, by any act of his, to preclude the plaintiff from becoming nonsuit if he pleases, unless it be authorized by statute; and we are of opinion that there is nothing contained in our Act of Defalcation which warrants it. The defendant, having a demand against the plaintiff, is not compelled by the act to set it off; he may do so, or he may bring an action against the plaintiff for it, as he pleases; it is therefore his own folly or neglect if he permit the statute of limitations to interfere with the collection of his demand." This case was cited with approval in Gilmore v. Reed, 76 Pa. 462, and in the comparatively recent case of Consolidated National Bank v. McManus, 217 Pa. 190, 192, 66 A. 250, it was said: "The fact that a case is at issue on a plea of set-off is not sufficient to prevent the plaintiff from taking a nonsuit." It is true that the claim of the plaintiff, as well as the claim of the defendant, arose out of the same transaction and depended upon a determination of the question as to whether the lease had been renewed, and a finding of that fact in either case would be res adjudicata in the other, but the defendant here is deprived of no right. If the case is discontinued, the statute of limitations has not run and defendant is therefore in a position to start a new action which would be tried under the Practice Act. We are of the opinion that the plaintiff's motion for permission to take a nonsuit should have been granted.

In view of the conclusions at which we have arrived, it is not necessary to pass on the other assignments of error.

Judgment of the lower court is reversed and a new trial awarded.

STADTFELD, J., dissents.